DECEMBER.                    WILLIAMS VS. HODGSON.

Whether or not
the answer of one        APPEAL from a decree of the Court of Chancery. The
of the defendants
to a bill in chan-   bill, which was filed by the appellee against *Williams*,
cery, is evidence
against another  (the appellant,) and *John Clarke*, stated that *Williams*
defendant?
A bond given by  and *Clarke* entered into partnership under the name of
one partner for a
simple contract  *John Clarke*, & Co.  During the partnership, *Clarke*
debt due from the
partners to a credi- bought goods from the complainant, (*Hodgson*,) which
tor, and accepted
by him, is by ope-  were delivered to *Clarke* on account of the partnership,
ration of law a re-
lease of the other  and by him sold.  That the belief that *Williams* was a
partner, and an
extinction of the  partner, gave credit to the firm.  That on the 7th of July
simple contract
debt, at law, in  1797, *Clarke* settled with the complainant, and the con-
equity.
Ignorance of the  cern was found indebted £819 0 5, *Virginia* currency;
law, as to the con-
sequences of a  and for that sum *Clarke* gave bond to the complainant, in
creditor's accept-
ing the bond of one  the names of *Clarke* and *Williams*, (jointly and severally,)
of the partners for
a simple contract  executed by *Clarke* alone, signed *John Clarke*, & Co.  That
debt, due from the
partnership, is not  *John Clarke*, & Co. being afterwards indebted to the com-
a ground for relief
in equity.  plainant in $598 34, and interest, for goods sold to *John*
Such a bond,
although not bind-  *Clarke*, for and on account of the concern, *Clarke*, for himself
ing on the partner
who does not ex-  and *Williams*, on the 18th of November 1797, gave another
ecute it, is obliga-
tory on the one ex-  bond to the complainant, signed *John Clarke*, & Co.  That
ecuting it.
A complainant  *Clarke* is insolvent, &c.  That suits were brought on the
is not entitled to
relief in chancery  bonds in the general court against *Williams*, and were
against the execu-
tors of a joint obli-  *non prossed*, because that court were of opinion that one
gor, who was a
surety in the bond.  partner could not execute a bond, so as at law to bind his
Per *Hanson*, Chan.
(note)  copartner, unless a special authority for such purpose ex-
isted.  *Prayer* for a disclosure from the defendants, whe-
ther they were partners or not, and that they may be com-
pelled to account with and pay the money due to the com-
plainant, and for other relief, &c.  The *answer* of *Wil-
liams* stated, that he and *Clarke* entered into partnership
in October 1795, for three years, in the milling and dis-
tilling business.  *Clarke* was directed not to purchase
merchandize on *Williams*'s account, and he believes that
*Clarke* sold goods on his own account.  He does not know
whether or not *Clarke* bought goods on the partnership ac-
count, and if he did, the answer insisted that the defen-

dant was not liable. That he knew nothing of the settlement or execution of the bonds. That suits were brought on the bonds, and *non prossed,* as stated in the bill, and that *Clarke* was insolvent. That the partnership was dissolved in 1798. *Clarke* was the acting partner; and the defendant never bought any goods for the partnership, and he does not know the consideration of the bonds.

*Testimony* was taken under commissions issued for that purpose.

The *answer* of *Clarke,* put in after all the proof was taken and returned, admitted all the facts alleged in the bill.

KILTY, Chancellor, (February term 1806.) The objects of the bill, as stated therein, were to have a disclosure from the defendants, whether they were partners; to compel them to account with the complainant, and pay the money due as charged in the bill, on account of goods sold to them, and to obtain other relief.

As a ground for relief, the complainant states, that during the continuance of the partnership, *Clarke* gave a bond to him in his own name, and that of *Williams,* for a balance due on account of goods sold to them, and afterwards another bond was given on a similar account, on which suits were brought against *Williams* in this state, and *non prossed,* on the ground of such bonds not binding him at law.

The answer of *Williams* denies the partnership to the extent alleged by the complainant, and does not admit the purchase of the goods by *Clarke;* the settlement or execution of the bonds. It admits that *Clarke* is insolvent, and that suits were brought on the bonds, and *non prossed* as stated in the bill.

The defence set up is, that the remedy, (being for the price of goods sold,) is at law, and that it is not a case for relief in equity, and that the bonds relied on as a ground of relief by the complainant, are not proved. And it is also contended that an issue should be tried as to the partnership, &c. and that the question of law should be submitted to the judges.

The counsel for the complainant relies on the facts disclosed in the case, to support the jurisdiction and the re-

lief prayed for; and also contends that the demand being against the defendants as partners, gives the court of equity a concurrent power with a court of law; and so as to the prayer for a discovery.

Upon this question of jurisdiction, the case is attended with considerable difficulty, and the authorities on the subject have been carefully examined with a view to its decision.

The position laid down by the complainant is certainly too broad. A prayer for a discovery, which is made a part of every bill in calling on the defendant to answer, cannot give a jurisdiction in every case, nor can the circumstance of the defendants being partners give such jurisdiction in a case purely determinable at law.

If therefore the complainant had merely stated a sale, and delivery of goods, and had brought his bill to recover the price, or if instead of a bond, a note unsealed had been given by *Clarke*, the complainant would not have been so ill advised as to have prayed for relief in this court, or if he had, would have failed to obtain it.

But there are circumstances in this case which, under the principles recognized by courts of equity, incline the chancellor to think that the jurisdiction may be sustained.

It is certainly desirable that the boundaries between the courts, as to their jurisdiction, should be prescribed, but they are not in all cases to be clearly discovered, and a writer of eminence observes, that "to strike out the distinguishing principle upon which courts of equity in such cases have proceeded, would be indeed extremely useful, but that after having given considerable attention to the subject, he found himself incapable of reconciling the various decisions on it."

In addition to the maxim, that matters of *account, fraud, accident* and *mistake*, are proper objects of a court of equity, there are other principles which require to be considered in viewing this case. Although a court of equity will not generally give relief where the party has a remedy, or the matter is properly determinable at law, yet to prevent such relief, it must be a case which can be fully investigated, and receive a complete and effectual decision in a court of law, and the remedy there must be clear and certain.

1809

Williams
v.
Hodgson

In many cases a court of equity will exercise jurisdiction although a remedy might be had in a court of law.

There are some cases in which, although the complainant might have a remedy at law, a court of equity having obtained jurisdiction for the purpose of discovery, will retain the suit for the purpose of giving relief; and if this rule was more general than it is, it would only be an extension of the principle in bills for account of assets, which are stated to have been originally only bills for discovery, which could not be had without an account, but on which the courts of equity have made complete decrees, and given the party his debt likewise.

Equity jurisdiction is exercised to put a bound to vexatious and oppressive litigation, and to prevent a multiplicity of suits.

It is exercised where the courts of ordinary jurisdiction are made instruments of injustice.

A court of equity will lend its aid whenever by fraud or accident a person is prevented from effectually asserting, in the courts of ordinary jurisdiction, rights founded on principles acknowledged by those courts, and where parties by contract have given a right, but have not given a sufficient remedy, and in the case of defective securities for money.

The present case may not perhaps come under the scope of all these principles, but there are some of them which appear to be applicable to it.

Without stating particularly the evidence in the cause, the chancellor is satisfied of the existence of the partnership, as alleged by the complainant, and of the liquidation of the balance due for the goods sold, the execution of the bonds as stated, and the event of the suits on them. With regard to the answer of the defendant, *Clarke*. it is considered, that the partnership being proved by other testimony, his admissions are evidence in the same manner as his acts would be in the exercise of the joint business of the firm. And it may here be observed, that the responsibility of one partner for the acts of another, is not, as stated by the defendants' counsel, a principle of *sheer* mercantile law, but is founded in justice and necessity, and is inseparable from the nature of partnership transactions.

It appears that *Clarke* executed the bonds with a view of ascertaining, and perhaps of securing in some degree, the balance due for goods sold to the company; and these bonds

were taken by the complainant from a *misapprehension* or ignorance of their legal effect.

If notes had been given by *Clarke*, without seal, as in the case of *Riddle(a)*, and the partnership had been proved, they would have been obligatory on the defendant, *Williams*, at law. The bonds cannot be considered in equity as less solemn and obligatory than the notes, but the remedy sought for on the bonds was defeated by what was indeed a *sheer* principle of law. For if it be proved, as the chancellor conceives it to be, that the defendant, *Williams*, was liable, and might have been bound by notes, without seal, for the same amount, the defence set up to the bonds was not an equitable or conscientious one.

In this respect then the court of law, or (as expressed in one of the principles above stated,) the court of ordinary jurisdiction, has been made the instrument of injustice. By the *accident*, as it may be termed, of the balance due being secured by bonds, the complainant was prevented from asserting in a court of law the right of recovering money due to him on principles acknowledged by all courts.

The parties who purchased the goods have, by the authorised acts of one of them, given (by their contracts,) a right to the money admitted thereby to be due, but have given a remedy insufficient at law, by securities, in that respect, defective.

It is alleged, by the counsel for the defendants, that the complainant, if the money is due to him, has a full and adequate remedy at law; and to prove this, he contends that the bonds are not an extinguishment of the original contract. If the bonds were obligatory on *Clarke*, (which seems to be admitted,) it is difficult to say how the original contract, which was a joint one, remains unimpaired, or how *Clarke*, if solvent, would be liable on both.

If an absolute decision on this question was necessary, it would appear consonant to reason that an unliquidated claim, sounding in damages, would be extinguished by the acceptance of an instrument of a higher nature, which fixed the amount. But supposing this to be left in doubt, has the defendant succeeded in showing that the complainant's remedy, (supposing him entitled,) would be *clear* and

*(a)* He brought a suit at law on such a note executed by *Clarke* & Co. against *Williams*, and recovered judgment.

1809.
Williams
vs
Hodgson

ecrtain in a court of law, or that it would there be fully investigated, and receive a complete and effectual decision?

If equity jurisdiction may be exercised to put a bound to vexatious and oppressive litigation, and prevent a multiplicity of suits, it is not necessary to send a party to a court of law, where the remedy, if to be attained, would be the same; and in this case it may be inferred from the evidence of *J. Riddle*, that if instead of bonds, notes unsealed had been given, the same recovery would have been had as in *Riddle's* case. And the same principle, in addition to the discretionary powers of this court, will account for the chancellor's not applying to a court of law, as was suggested by the defendants' counsel.

The complainant has already tried his remedy at law, which has failed, as much at least through the fault of the defendants as his own; and it is not clear but that a suit in this court might have been originally sustained on the ground of *Williams* not being bound in law by the bonds, though in that case the opinion of the court or the judges, as to the law, might have been resorted to.

In the case of a joint bond it is a constant practice, in case of the insolvency of the surviving obligor, to commence a suit in chancery against the representatives of the other party; and although this arises in part from the acknowledged jurisdiction, as to administrators, &c. yet it is grounded also on the situation of the parties rendering the remedy of the law ineffectual.

With regard to the part of the bill praying for a discovery, it may be further observed, that as the binding of *Williams*, by the bonds of *Clarke*, is alleged to have depended at law on the assent of *Williams*, an acknowledgment of such assent might have been expected by the complainant on filing his bill, which might have been a reason for filing it.

The chancellor has stated his reasons at greater length than may be usual or necessary in such cases, on account of the doubts which he entertained at the trial. These doubts have been removed by the further consideration which he has given to the subject; and his opinion is grounded on the principles which he has stated, and on his determination, that where the merits appear to be with the complainant, he will not dismiss a bill on an allegation of the

want of jurisdiction, or any other similar objection, unless it is clearly and positively established. *Decreed*, that the defendants pay to the complainant the sum of £1023 15 6 current money, with interest thereon, &c. and the costs of this suit. From this decree the defendant, *Williams*, appealed to this court.

The cause was argued before CHASE, Ch. J. BUCHANAN, GANTT, and EARLE, J.

*Shaaff* and *Magruder*, for the Appellant, contended, 1. That there was no legal proof of a partnership between the appellant and *Clarke*. 2. That if the appellee had any right to recover against the appellant, his remedy, from the proof in the case, was at law, and not in equity; and 3. That the appellee had no right, either at law or in equity, to recover against the appellant.

On the *first point* they contended, that the answer of one defendant was not evidence against another defendant, and cited 1 *Harr. Chan. Pr.* 36, 41.

On the *second point*, they cited *Dorsey's Ex'x. vs. Dorsey's Ex'rs. (a)*. They also contended, that there was not

(a) The case of *Dorsey's Ex'x. vs. Dorsey's* Ex'rs. in the court of chancery at February term 1794, appears to be this: R. T. with J. D. his surety, executed their joint bond to E. D. in 1768, payable in 1769, and in 1788 a joint suit was brought against them at law upon the bond. During the pendency of the suit, J. D. died, his death was suggested, and judgment by confession was rendered against R. T. in 1790. The suit continued against J. D. and in 1791 it was entered *abated*. R. T. obtained a discharge under the insolvent law in 1788, and his trustee sold property belonging to the insolvent, on a credit, more than sufficient to pay all his debts. R. T. was always able to pay the debt sued for, until and after 1786, but no measures were taken for its recovery until the above suit was brought. The executors of J. D. had fully administered and paid away all the assets of the deceased; but they had notice from E. D. and a demand of payment was made of them within one year after the death of J. D. A bill was filed in chancery in 1792, by E. D. (and on his death revived in the name of his executrix) against the executors of J. D. to be paid the debt due on the bond. The defendants, among other things, in their answers, relied upon the act of limitations.

HANSON, Chancellor. On every application to this court, not grounded on positive law, when it appears, that no former decision is in all points applicable to the present case, the principles, on which the court was originally instituted, are to be considered. Its jurisdiction, from the beginning, has been exercised in preventing men from taking unconscientious advantages of law, in obliging them to discharge trusts, and to perform reasonable engagements of every kind, either express or implied, and in relieving against fraud, or accident. But it never yet has been the professed business of this court to compel men to do that, which neither they,

sufficient proof of the execution of the bonds stated in the bill; that the originals ought to have been produced. *Peake's Evidence*, 96. *Wymark's* case, 5 *Coke*, 74. 2 *Com. Dig.* tit. *Pleader*, (P. 1). *Harper vs. Hampton*, 1 *Harr. & Johns.* 710; and *Desobry vs. Terrier*, *(ante* 219).

1809.

Williams
vs
Hodgson.

On the *third point* they contended, that the execution of the bonds extinguished the simple contract debt, both as to, *Williams* and *Clarke.* They cited *Bac. Ab.* tit. *Release*, (G.) *Bull. N. P.* 155. *Chitty's Plead.* 155. *Clement vs. Brush*, 3 *Johns. Cas.* 180. *Pierson vs. Hooker*, 3 *Johns. Rep.* 70. 4 *Vin. Ab.* 387. 1 *Fonbl.* 117, *(note.)* 2 *Com. Dig.* tit. *Chancery*, 476, 330, 331; and *Tom vs. Goodrick*, 2 *Johns. Cas.* 213.

nor the persons whom they represent, have engaged to perform, which the positive laws of the land do not enjoin, and which equity and good conscience do not demand. In some cases, indeed, which did not appear to come under known established principles, or to be embraced by former decisions, chancellors have exercised their ingenuity in raising agreements by construction; provided nevertheless, that the performance of the thing, thus supposed to be contracted for, might fairly and reasonably be demanded. Hence it is that the condition of a bond to pay money has been construed an agreement, which equity ought to enforce, after the obligor has been discharged from the penalty at law. How far the first decision in such case was right, is perhaps questionable; for this plain reason, that the obligor was not, and could not be apprized of the power, which equity would afterwards assume, of compelling him to do that, which he never in any manner contracted to perform; the operation of a joint bond at law being this, that during the life of both obligors it is binding on both, and, after the death of one, the obligee can have recourse to the other only. However, the determination in the case of *Bishop and Church*, 2 *Ves.* 371, cited by the counsel on each side, must now be recognized as a law or rule for this court; and whether that case applies sufficiently to the present is to be examined.

The two cases appear to agree in every point, except one; but that one point, in which they differ, is important. In the former case, executors of a joint obligor were called on to pay money lent to the testator and the other obligor, who were partners in trade, and the constructive agreement of the testator, was on a substantial consideration. But, in the present case, the executors are called on to pay money which never was, or intended to be, participated by their testator. The constructive agreement therefore, on which alone this court could decree against them, was voluntary, and such as, without special circumstances, ought not to be enforced. What then are the special circumstances of this case? To say nothing of the lapse of time, and the neglect of the complainant. He has it still in his power to obtain the debt from the trustee of the surviving obligor. In short, it appears to the chancellor, that a decision in favour of the complainant would go far beyond any former determination, and that former determinations, with respect to joint obligors, have gone quite far enough. On the point relative to the act of limitations, it is not necessary to decide—*Decreed*, that the bill be *dismissed*.

*Key*, and *Johnson*, (Attorney General,) cited *Watson on Part.* 40, 337, 458. *Higgins's* case, 6 *Coke*, 46. *Abbott vs. Smith*, 2 *W. Blk. Rep.* 950. *Maddox vs. Jackson*, 3 *Atk.* 406. *Darwent vs. Walton*, 2 *Atk.* 510; and *Blk. Com.* 436.

CHASE, Ch J. delivered the opinion of the court. The court have considered the bill, answer and proof, in this case, the arguments of counsel, and the decree of the chancellor; and admitting the proof to be sufficient to establish a partnership between *Williams* and *Clarke* in the extent charged in the bill, in opposition to the answer of the defendant, and admitting also that the bonds mentioned in the bill, as executed by *Clarke*, under the signature of *Clarke & Co.* have been fully proved, it appears to the court that the complainant is not entitled to any relief in equity, and that the decree of the court of chancery ought to be reversed.

It is a principle recognised by the courts of law and equity, that a bond given by one partner for a simple contract debt due from the partners to the creditor, and accepted by him, is by operation of law a release of the other partner, and an extinction of the simple contract debt.

It is also established by the courts of law and equity, that ignorance of the law, as to the legal consequences resulting from such a bond, cannot excuse or form a ground for relief in equity, on the suggestion and proof that the party was mistaken as to the legal effects of such a bond, imagining at the time that it could not operate as a release to the other debtor, and that his responsibility still existed.

The court are also of opinion, that the bonds set forth in the bill, although not binding on *Williams*, are obligatory on *Clarke*.

On these grounds the court decide, that the decree of the court of chancery ought to be reversed.

BUCHANAN, J. I consider the partnership, alleged in this case to have existed between the defendants below, as sufficiently established to the extent charged in the bill, and that the delivery of the goods and merchandise, said to have been sold to *Clarke*, as acting partner, is fully proved.

But if the bonds charged in the bill to have been passed by *Clarke*, in behalf of *Williams* and himself, were executed by him for the amount of those goods, the simple contract debts were not thereby severed, and continued open as to *Williams*, and destroyed as to *Clarke*, (on whom such bonds would be obligatory;) but being respectively joint, they became in law extinguished as to both. And though equity will interpose its aid where a remedy is wanting at law, the demand continuing, yet it cannot revive a debt which in law is extinguished.

If, however, such a bond could be construed to extinguish a simple contract debt as to the party signing it only, leaving it open as to the other partner for the interposition of a court of chancery, yet in this case the complainant has failed in proof to lay a foundation for a decree against *Williams*; for, as against him, the bonds in question which are set up in the bill as the very ground of the relief prayed, are not proven by any legal evidence exhibited in the record; and it cannot be seriously contended, that in the absence of such proof, the chancellor could hold jurisdiction over the case; for if no such bonds were executed by *Clarke*, the simple contract debt remains unimpaired, and the proper remedy is in a court of law.

Upon the whole, I am of opinion that the chancellor's decree, however consonant to strict justice, ought to be reversed.

DECREE REVERSED.